## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JASON MIZELL**                                    **CIVIL ACTION**

**VERSUS**                                          **NO. 18-6653**

**DARREL VANNOY, WARDEN**                           **SECTION "H"(4)**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C),** and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual and Procedural Background

The petitioner, Jason Mizell ("Mizell"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]   On February 10, 2010, Mizell was indicted by a Washington Parish Grand Jury for aggravated rape.[3]   He pleaded not guilty on April 30, 2010.[4]

The record reflects that, at the time of the incidents leading to Mizell's conviction, J.S. was eleven years old and on medication, Risperdal, for a bipolar condition.[5]   Mizell was a friend of

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

[3] St. Rec. Vol. 1 of 22, Indictment, 2/10/10.  Pursuant to La. Rev. Stat. § 46:1844W(3), initials are used for minors and sex offense victims and their family members.  This Court will do the same.

[4] St. Rec. Vol. 1 of 6, Minute Entry, 10/21/13.

[5] The facts are taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal.  *State v. Mizell*, No. 2012-KA-2045, 2013 WL 122540, at *1-2 (La. App. 1st Cir. Dec. 27, 2013); St. Rec. Vol. 10 of 22, 1st Cir. Opinion, 2012-KA-20145, pp. 2-4, 12/27/13.

J.S.'s parents, whom J.S. had known his entire life and thought of as an uncle. In October of 2009, J.S. spent the night at Mizell's home. J.S. and Mizell watched television, and then Mizell gave J.S. alcohol to drink and marijuana to smoke, after which J.S. fell asleep. J.S. awoke after midnight to find his pants down, and Mizell was "masturbating" J.S.'s penis. J.S. jumped up and was "really scared." Mizell told J.S. to calm down. J.S. went to sleep on the couch. J.S. did not ask to go home because of the time, and he did not want his parents to know about the drugs.

J.S. did not want to go back to Mizell's house, but he did so about two weeks later to avoid making his parents suspicious. He again smoked marijuana and drank alcohol with Mizell. J.S. fell asleep in Mizell's bedroom while watching a movie. He awoke sometime after midnight to find that his pants were off and Mizell had his mouth on J.S.'s penis. J.S. pushed Mizell away from him and cried. Although J.S. wanted to tell his parents, he did not know what to say.

A few days later, J.S. stayed at Mizell's house on a third occasion. J.S. again smoked marijuana and drank alcohol with Mizell. He used Mizell's computer and fell asleep in Mizell's bed. When J.S. later awoke, Mizell had pulled J.S.'s pants down and had his mouth on J.S.'s penis. J.S. kicked Mizell and demanded to be taken home. Mizell refused to take him. The next day, Mizell took J.S. to the Washington Parish Fair where they met up with J.S.'s family as planned.

That night, J.S. told his ten-year old cousin about the abuse. When J.S.'s mother learned of the abuse, she confirmed it with J.S. and called the police. After Mizell's arrest, J.S. also gave an interview at the Child Advocacy Center describing each of the incidents.

Mizell was tried before a jury on May 21 through 23, 2012, and found guilty as charged.[6] At a hearing on July 2, 2012, the state trial court denied Mizell's counsel-filed motions for a new

---

[6] St. Rec. Vol. 1 of 22, Trial Minutes, 5/21/12; Trial Minutes, 5/22/12; Trial Minutes, 5/23/12; Jury Verdict Form, 5/23/12; St. Rec. Vol. 2 of 22, Trial Transcript, 5/22/12; Trial Transcript, 5/21/12; St. Rec. Vol. 3 of 22, Trial Transcript (continued), 5/21/12; St. Rec. Vol. 4 of 22, Trial Transcript, 5/23/12.

trial and for post-verdict judgment of acquittal, both of which were based on sufficiency of the evidence.[7]  The Trial Court then sentenced Mizell to life in prison without benefit of parole, probation, or suspension of sentence.[8]

On appeal to the Louisiana First Circuit Court of Appeal, Mizell's appointed counsel asserted that the trial court erred in refusing to grant a mistrial after the prosecutor made improper references to Mizell's failure to testify.[9]  On December 27, 2013, the Louisiana First Circuit affirmed the conviction and the sentence finding no merit in the claim.[10]

On October 10, 2014, the Louisiana Supreme Court denied Mizell's related writ application without stated reasons.[11]  Mizell's conviction was final 90 days later, on January 8, 2015, because he did not file for review with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for *certiorari* with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

On March 18, 2015, Mizell signed and submitted to the state trial court an application for post-conviction relief in which he asserted claims of prosecutorial error and ineffective assistance of trial and appellate counsel.[12]  The Court denied the related request for an evidentiary hearing and declined to further consider the application for error of form.[13]

---

[7]St. Rec. Vol. 1 of 22, Sentencing Minutes, 7/2/12; Motion for New Trial, 6/12/12; Motion for Post-Verdict Judgment of Acquittal, 6/12/12; St. Rec. Vol. 4 of 22, Sentencing Transcript, 7/2/12.

[8]St. Rec. Vol. 1 of 22, Sentencing Minutes, 7/2/12; St. Rec. Vol. 4 of 22, Sentencing Transcript, 7/2/12. Although the State indicated it would pursue a multiple offender bill, the bill was never filed.

[9]St. Rec. Vol. 9 of 22, Appeal Brief (unfiled copy), 2012-KA-2045, dated 7/9/13.

[10]*Mizell*, 2013 WL 122540, at *1; St. Rec. Vol. 10 of 22, 1st Cir. Opinion, 2012-KA-20145, 12/27/13.  The Court found error in the state trial court's failure to wait 24 hours after denying the new trial motion before sentencing Mizell and concluded it was not reversible error because no challenge was made by Mizell.

[11]*State ex rel. Mizell v. State*, 150 So.3d 894 (La. 2014); St. Rec. Vol. 9 of 22, La. S. Ct. Order, 2014-KH-0237, 10/10/14; La. S. Ct. Writ Application, 14-KA-237, 2/3/14 (dated 1/21/14).

[12]St. Rec. Vol. 10 of 22, Application for Post-Conviction Relief, 3/26/15 (dated 3/18/15); *see also*, Trial Court Order, 4/17/15; Trial Court Judgment, 2/5/16; Letter to Mizell, 7/13/15; Appellate Project Letter, 8/16/15.

[13]St. Rec. Vol. 10 of 22, Trial Court Order, 4/17/15.

On October 12, 2015, Mizell signed and submitted a second application to the state trial court asserting 41 claims of ineffective assistance of counsel.[14]  On February 5, 2016, the state trial court denied relief after addressing each of the claims and finding that Mizell failed to meet his burden of proof under *Strickland v. Washington*, 466 U.S. 668 (1984).[15]

On July 11, 2016, the Louisiana First Circuit denied Mizell's related writ application for errors of form and instructed him to refile a proper application before September 9, 2016.[16]  Mizell

---

[14]St. Rec. Vol. 10 of 22, Application for Post-Conviction Relief, 10/19/15 (dated 10/12/15); St. Rec. Vol. 11 of 22, Application for Post-Conviction Relief (continued), 10/19/15 (dated 10/12/15).  Broadly construed, Mizell asserted the following claims of ineffective assistance of counsel: (1) inmate counsel erred in filing an incomplete first application for post-conviction relief; (2) appellate counsel failed to assert the arguments raised in the motion for new trial and for post-verdict judgment of acquittal; (3) counsel did not object to the contradictions in J.S.'s statements which led to the prosecutor's misleading statements during closing arguments; (4) counsel should have used J.S.'s statement to Officer Culpepper to prepare a defense; (5) counsel did not move for a preliminary examination to prepare for trial; (6) counsel did not seek review of the denial of the motion to preclude other bad acts evidence; (7) counsel did not argue that the State's untimely moved to introduce its inculpatory statements to S.H.; (8) counsel failed to move to suppress the J.S.'s CAC interview; (9) counsel failed to call witnesses that he did not molest; (10) counsel did not investigate the phone referenced by S.H.; (11) counsel did not interview people who lived with J.S.; (12) counsel did not move for mistrial during S.H.'s prejudicial testimony; (13) counsel did not adequately cross-examine S.H.; (14) counsel failed to investigate the delay by the victim's family to call police; (15) counsel failed to establish that S.H. knew about a prior investigation against Mizell; (16) counsel did not investigate the case; (17) counsel misled the jury with an incorrect date; (18) counsel failed to object to the State's closing arguments; (19) counsel failed to cross-examine C.G., a prior victim, with the police report; (20) counsel failed to investigate potential perjury; (21) counsel failed to adequately cross-examine J.S.'s parents; (22) counsel failed to question J.S.'s father about whether he thought Mizell was guilty; (23) counsel failed to investigate conflicts in the dates when S.H. took J.S. to the police; (24) counsel prejudiced the defense during his questioning of J.S.; (25) counsel failed to challenge the warrant issued based on J.S.'s allegations; (26) counsel did not establish that Officer Culpepper was involved in the prior investigation and let S.H. testify about it; (27) counsel failed to question J.S. about his mother's testimony; (28) counsel failed to question J.S. about his testimony; (29) counsel failed to move to suppress the CD; (30) counsel failed to move to suppress J.S. statement and quash the charges; (31) counsel failed to investigate why J.S. lied in his CAC statement; (32) counsel did not cross-examine C.G. on J.S.'s testimony; (33) counsel did not establish that the police did not find the dildo mentioned by J.S.; (34) counsel failed to get clarification when J.S. testified "not really;" (35) counsel failed to object to the testimony of a prior victim, R.G.; (36) counsel failed to object to the prosecution's reference to C.G. and R.G. when he was not being tried for molesting them; (37) counsel did not address the conflicts in J.S.'s story before trial; (38) counsel did not work for his client and the claims asserted satisfy the *Strickland* test; (39) counsel failed to point out prosecutorial errors during side-bar conferences; (40) counsel did not cross-examine J.S. about the State's opening argument; and (41) counsel at the sentencing hearing did not use the trial transcripts.

[15]St. Rec. Vol. 11 of 22, Trial Court Judgment, 2/5/16.

[16]St. Rec. Vol. 12 of 22, 1st Cir. Order, 2016-KW-0620, 7/11/16.  On March 7, 2016, the Louisiana First Circuit also denied Mizell's application for writ of mandamus noting that the state trial court had already ruled on his application for post-conviction relief on February 8, 2016.  St. Rec. Vol. 12 of 22, 1st Cir. Order, 2016-KW-0098, 3/7/16.

timely filed the second writ application, which the Louisiana First Circuit summarily denied on October 31, 2016.[17]

On February 23, 2018, the Louisiana Supreme Court denied Mizell's subsequent writ application holding that he failed to establish ineffective assistance of counsel under *Strickland*, adopting the reasoned opinion issued by the state trial court.[18]

On May 9, 2018, Mizell signed and submitted a motion seeking clarification or a ruling on the three claims asserted in his first, deficient application for post-conviction relief filed in the state trial court on March 18, 2015.[19]  The state trial court denied relief, but clarified the following: its prior ruling on Mizell's second petition resolved the three claims asserted in the first application; there remained no pending claims or motions before the Court; and pursuant to the Louisiana Supreme Court's order issued February 23, 2018, Mizell had exhausted all available post-conviction remedies.[20]  The record does not reflect that Mizell sought review of this ruling.

## II.    Federal Petition

On July 12, 2018, the clerk of this Court filed Mizell's federal petition for habeas corpus relief in which he asserts, under a broad reading, the following sixteen grounds for relief:[21]

(1)    the trial court erred in refusing to grant a mistrial after the prosecutor made improper reference to Mizell's failure to testify;

(2)    appellate counsel was ineffective for failure to assert the arguments made in the motion for new trial and for post-verdict judgment of acquittal;

---

[17]*State v. Mizell*, No. 2016-KW-1197, 2016 WL 6426534, at *1 (La. App. 1st Cir. Oct. 31, 2016); St. Rec. Vol. 13 of 22, 1st Cir. Order, 2016-KW-1197, 10/31/16; 1st Cir. Writ Application (unfiled copy), 2016-KW-1197 (dated 9/6/16).

[18]*State ex rel. Mizell v. State*, 236 So.3d 547 (La. 2018); St. Rec. Vol. 18 of 22, La. S. Ct. Order, 2016-KH-2169, 2/23/18; La. S. Ct. Writ Application, 16-KH-2169, 12/8/16 (not dated, postal date 11/28/16); St. Rec. Vol. 11 of 22, La. S. Ct. Letter, 2016-KH-2169, 12/12/16.

[19]St. Rec. Vol. 11 of 22, Motion for Clarification, dated May 9, 2018.

[20]St. Rec. Vol. 11 of 22, Trial Court Judgment, 6/14/18.

[21]Rec. Doc. No. 1.

(3)     trial counsel was ineffective for failure to challenge the contradictions in J.S.'s statements, which led to the prosecutor's misleading statements during closing arguments;

(4)     trial counsel was ineffective because he (a)failed to investigate the crime scene or interview the alleged prior victims and those who denied being molested to determine the truthfulness of J.S.'s allegations, (b) failed to interview the victim and other State witnesses to develop a theory of the case; (c) failed to locate or call Mizell's aunt at trial, (d) failed to conduct effective cross-examination of the victims of his prior crimes, C.G. and R.G., and (e) was not prepared for trial to question the victims of the prior bad acts as proven by his motion to preclude the evidence noticed by the State six days before trial;

(5)     counsel was ineffective when he did not adequately cross-examine S.H. about threats made to Mizell to force him to talk to police;

(6)     counsel was ineffective for failure to inform the jury that his statement was made after threats by the family;

(7)     counsel was ineffective for failing to question S.H. about her knowledge of his prior molestation charges;

(8)     counsel was ineffective for lack of pretrial preparation, failure to file discovery and other pretrial motions, or to obtain grand jury transcripts;[22]

(9)     counsel was ineffective for misleading the jury about the dates of J.S.'s reporting;

(10)    counsel was rendered ineffective by the State's late notice of the testimony of Mizell's prior molestation victims, C.G. and B.G. and counsel failed to object to its introduction;

(11)    counsel was ineffective for failure to cross-examine C.G. about the police report;

(12)    counsel was ineffective because he lacked pretrial preparation, filed no discovery or other pretrial motions, subpoenaed only one witness, and failed to obtain a grand jury transcript;[23]

(13)    counsel was ineffective when he questioned J.S. about school;

(14)    counsel was ineffective when he (a) failed to question J.S. about his mother's testimony and (b) denied Mizell's confrontation rights when he failed to subpoena the detective who made statements, wrote reports, and viewed the scene;

---

[22]This issue was not phrased like this in the state trial court but was later expanded to read as it does here in claim 16 of the Louisiana Supreme Court writ application.  State court review appears to be exhausted despite the change in the phraseology.

[23]*Id.*

(15)    counsel was ineffective for failure to investigate the discrepancies in J.S.'s statements on the CD of the CAC interview; and

(16)    counsel was ineffective when he failed to object to the State's introduction of other crimes evidence of the prior molestations without proper notice.

The State filed a response in opposition to Mizell's petition asserting that Mizell's claims are without merit, and the state courts' denial of relief was neither contrary to nor an unreasonable application of federal law.[24]  Mizell filed a reply to the State's opposition response summarily re-urging the merits of his claims and incorrectly suggesting that the State failed to respond to his claim of prosecutorial misconduct.[25]

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[26] applies to this petition, which is deemed filed in this Court no later than July 12, 2018.[27]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in

---

[24]Rec. Doc. No. 14.

[25]Rec. Doc. No. 15.  The State responded to Mizell's claim of prosecutorial misconduct and all of the ineffective assistance of counsel claims.  Rec. Doc. No. 14, p.19, ¶4; *see*, Rec. Doc. No. 15, p. 5.

[26]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[27]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Mizell's petition and accompanying documents on July 12, 2018, when they were received.  The official stamp of the prison legal programs department reflects that the pleadings was received from Mizell on July 12, 2018, for electronic mailing to the Court.  Rec. Doc. No. 2-1.  The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

"procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes, and the record establishes, that Mizell's petition was timely filed, state court review was exhausted, and no claim is in procedural default to prevent review by this court. The Court will address the claims.

## IV.    **Standards of a Merits Review**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no

'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 572 U.S. at 426-27; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d

230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.    Prosecutorial Misconduct (Claim No. 1)

Mizell alleges that the prosecutor violated his constitutional rights by making indirect references during closing arguments to Mizell's failure to testify.  Specifically, Mizell points to the prosecutor's references to "uncontroverted" evidence of Mizell's guilt.  The State argues that the state courts' denial of relief was not contrary to federal law, because the prosecutor did not make impermissible comments and that any such comment had no substantial or injurious effect on the jury's verdict.

During the State's closing arguments, the prosecutor twice referred to the uncontroverted testimony or evidence that Mizell repeatedly performed oral sexual intercourse on J.S.[28]  After the second reference, counsel approached the bench and Mizell's counsel moved for mistrial based on the use of the word "uncontroverted."  Mizell's counsel argued that this was a reference to Mizell's failure to testify and moved for a "mandatory mistrial" under state law.[29]  The prosecutor responded that his use of the word was a reference to the fact that J.S. never denied what happened and had no prior inconsistent statement about the rapes.  After additional argument, the state trial court denied the motion over the defense counsel's objections and reminded the prosecutor that the defense had no burden to put on witnesses.[30]

---

[28]St. Rec. Vol. 4 of 22, Trial Transcript, p. 122, l. 1-4, p. 123, l. 2-3, 5/23/12.

[29]*Id*., at p. 123.

[30]*Id*., at p. 124.

Mizell's appointed counsel asserted the denial of the mistrial as error on direct appeal. The Louisiana First Circuit denied relief after considering La. Code Crim. P. art. 770(3) and related state case law derived from the Supreme Court's opinion in *Griffin v. California*, 380 U.S. 609 (1965). The Court held that the references in the context of the proceeding were to the consistency of the victim's testimony compared to his prior statement and not to Mizell's failure to testify.

As an initial matter, to the extent Mizell may assert that the state trial court erred in failing to comply with state law, that is not a cognizable issue for this federal habeas court. A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted). Errors made under state law will not warrant federal habeas review. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see also Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review). The United States Fifth Circuit has specifically addressed state court error involving mistrials:

> Even if the court's refusal to declare a mistrial was a violation of Louisiana law, we, as a federal habeas court, are without authority to correct a simple misapplication of state law; we may intervene only to correct errors of constitutional significance.

*Smith v. Whitley*, No. 93-03208, 1994 WL 83777, at *1 (5th Cir. Mar. 3, 1994). Thus, it is not the province of this court to consider whether Louisiana law would have required the granting of a mistrial, nor is the Court required to determine whether the state appellate court should have found that an error occurred under state law.

Instead, this Court must focus on Mizell's claim that the prosecutor's comment violated his right against self-incrimination under the Fifth Amendment. This presents the court with a

mixed question of law and fact.  *Accord Montoya v. Collins*, 955 F.2d 279, 286 (5th Cir. 1992).

Under the AEDPA, the Court is required to determine whether the state court's denial of relief was

contrary to or an unreasonable application of federal law.

A prosecutor's comments on a defendant's exercise of his Fifth Amendment right not to

testify are constitutionally impermissible.  *Griffin*, 380 U.S. at 615.  A prosecutor's remarks must

be considered in the context of the situation in which they were made.  *United States v. Delgado*,

672 F.3d 320, 335 (5th Cir. 2012); *Hernandez v. Thaler*, 440 F. App'x 409, 416 (5th Cir. 2011).

To determine whether a petitioner's Fifth Amendment rights were violated, the proper inquiry is

to determine (1) whether the prosecutor's manifest intent was to comment on the defendant's

silence or (2) whether the character of the remark was such that the jury would naturally and

necessarily construe it as a comment on the defendant's silence.  *Cotton v. Cockrell*, 343 F.3d 746,

751 (5th Cir. 2003); *see also*, *United States v. Grosz*, 76 F.3d 1318, 1326 (5th Cir. 1996) (quoting

*United States v. Collins*, 972 F.2d 1385, 1406 (5th Cir. 1992)).

No manifest intent to comment on a defendant's failure to testify occurs if there is another

"equally plausible" explanation for a prosecutor's remarks.  *Lee v. Michael*, 476 F. App'x 29, 31

(5th Cir. 2012) (quoting *United States v. Collins*, 972 F.2d 1385, 1406 (5th Cir. 1992)); *Grosz*, 76

F.3d at 1326.  As for the character of the remark, "the question is not whether the jury possibly or

even probably would view the challenged remark in this manner, but whether the jury necessarily

would have done so."  *Grosz*, 76 F.3d at 1326 (citation, emphasis, and internal quotation marks

omitted); *Lee*, 476 F. App'x at 31.  Moreover, the Fifth Amendment is not violated when the

comments are made in "a fair response to a claim made by defendant or his counsel."  *United

States v. Robinson*, 485 U.S. 25, 32 (1988).  In assessing the meaning and impact of a prosecutor's

comments, the Supreme Court cautions that "a court should not lightly infer that a prosecutor

intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974).

In this case, the state courts resolved, and the record reflects, that the comments made by the prosecutor during closing arguments were not in violation of the Fifth Amendment as described in *Griffin*. Mizell's counsel went to great effort during trial (and in his closing arguments) to convey to the jury that J.S. was either lying or his story was inconsistent with his prior CAC statement, and therefore was unbelievable. The prosecutor, during argument, reiterated the consistencies in J.S.'s statements. When defense counsel objected to the state's use of the word "uncontroverted," the prosecutor confirmed that the reference was to draw the jury's focus to the consistencies in J.S.'s statements and the other evidence. The state trial court, and later the state appellate court, found this to be a reasonable explanation for the argument and not an impermissible comment.

This Court's review of the closing arguments reveals that the prosecutor was attempting to demonstrate that J.S.'s statements were consistent and supported by the other evidence at trial, including Mizell's admissible, out of court statements. A plain reading of the words used by the prosecutor in the context in which they were used indicates that the comment was a general reference to evidence offered by J.S., and not an indirect or direct comment on Mizell's failure to testify. The record also does not establish that the jury necessarily took the prosecutor's remarks as such a reference or that it had any impact on their verdict in light of the evidence of Mizell's guilt.

Mizell has not established that a *Griffin* error occurred in violation of his Fifth Amendment rights. *See Gongora v. Thaler*, 710 F.3d 267, 274 (5th Cir. 2013) (citing *Harrington*, 562 U.S. at

101-102); see *Hernandez*, 440 F. App'x at 417 ("In this case, however, one could plausibly interpret the prosecutor's remarks as referring to the lack of corroboration for Hernandez's story in the testimony of other actual and potential witnesses."). Mizell has failed to establish that the denial of relief on his claim was contrary to or an unreasonable application of federal law. He is not entitled to federal habeas relief on this claim.

## VI.    Effective Assistance of Counsel (Claims No. 2-16)

Mizell alleges that his trial and appellate counsel provided ineffective assistance on the numerous grounds listed above and addressed more specifically below. The state courts denied relief on these claims on post-conviction review under the standards set forth in *Strickland*, 466 U.S. at 668, and related state case law. The State asserts in its opposition response that this conclusion was correct and was not contrary to or an unreasonable application of *Strickland*.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, relied upon by the state courts, is the appropriate standard for judging the performance of counsel. In *Strickland*, the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v.*

*Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).   "The defendant must show that counsel's representation fell below an objective standard of reasonableness."   *Strickland*, 466 U.S. at 687-88.  The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.   *See Id.*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).  The reviewing court must "judge . . .  counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."   *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.   *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689).   "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."   *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689).  As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.   *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

To prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010).  Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice."   *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695).  In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Cullen*,

563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2). This Court must also apply the "strong presumption" that counsel's

strategy and defense tactics fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *Geiger*, 540 F.3d at 309; *Moore*, 194 F.3d at 591. In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236-37; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000). Tactical decisions, when supported by the circumstances, are objectively reasonable and do not amount to unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel. *Duhmel v. Collins*, 955 F.2d 962, 967 (5th Cir. 1992) (citing *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991)). In reviewing claims of ineffective assistance of appellate counsel, the Supreme Court has expressly observed that appellate counsel "need not advance every argument, regardless of merit, urged by the [ ] defendant." *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). When alleging ineffective assistance of appellate counsel, the defendant "must show that the neglected claim would have had a reasonable probability of success on appeal." *Duhmel*, 955 F.2d at 967. However, failing to raise every meritorious claim on appeal does not make counsel deficient. *Green v. Johnson*, 116 F.3d 1115, 1125-26 (5th Cir. 1997) (citing *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989)). Similarly, failing to raise a frivolous claim "does not cause counsel's performance to fall below an objective level of reasonableness." *Green*, 160 F.3d at 1037. The

17

Courts give great deference to professional appellate strategy and applaud counsel for "winnowing out weaker arguments on appeal and focusing on one central issue, if possible, and, at most, a few key issues. . ." *Jones v. Barnes*, 463 U.S. 745, 752 (1983). This is true even when the weaker arguments have merit. *Id*. at 751-52. Instead, the applicable test is whether the omitted issue was "clearly stronger" than the issue[s] actually presented on appeal. *See*; *e.g.*, *Diaz v. Quarterman*, 228 F. App'x. 417, 427 (5th Cir. 2007); *see also Smith v. Robbins*, 528 U.S. 259, 288 (2000).

The denial of effective assistance of counsel under *Strickland* is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question before this court is whether the state courts' denial of relief on these claims was contrary to or an unreasonable application of United States Supreme Court precedent.

### A.    Trial Counsel

Before addressing Mizell's individual arguments regarding his trial counsel's performance, the Court first must recognize, as did the state courts, that Mizell's claims are wholly conclusory and fall short of approaching proof of either prong of the *Strickland* test or overcoming the "doubly deferential" standard of review under AEDPA. It is well settled that conclusory claims of ineffective assistance will not suffice to entitle a petitioner to federal habeas relief. *See*, *e.g.*, *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."). "[I]neffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions." *United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006) (citing *Miller*, 200 F.3d at 286 n.6); *Sholes v. Cain*, 370 F. App'x 531, 535 (5th Cir. 2010); *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) (with respect to cumulation of meritless claims, "Twenty

times zero equals zero.").  Furthermore, even when his claims are considered, Mizell has failed to establish deficiency or prejudice in his counsel's performance under *Strickland*.

### 1.    Investigate, Prepare, and Subpoena Witnesses (Claims 4(a-c), 8, 12)

Mizell claims that his counsel was ineffective, because he failed to investigate the crime scene or the prior sexual abuse allegations to develop a theory of the case.  He contends that counsel did not interview the victims of his sexual assaults or his aunt, who lived with him in the house where he molested the children.

When a habeas petitioner alleges a failure of his counsel to investigate, he "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'"  *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted). In other words, a petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown. *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.").  Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed.  *See Moawad*, 143 F.3d at 948; *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting Report and Recommendation).

Mizell's conclusory arguments fail to establish what exculpatory information any further preparation, grand jury transcripts, or other investigation would have garnered.  Mizell has never alleged that the description of his home or where the rapes occurred was different than that described by J.S. or any other witness.  Mizell has not established why his counsel needed to visit the scene of the rapes to properly defend the case.

Mizell also offers no other "defense theory" that would have been disclosed by further investigation into the prior victims of his sexual assaults that was not already anticipated by counsel and addressed by his in-depth cross-examination of the three sexual abuse victims. As the state courts resolved, Mizell has failed to meet his burden of proof under *Strickland* with respect to his suggestion that further investigation was warranted.

Mizell also suggests that counsel should have interviewed and called his aunt, Ivy Hill (also referred to as Nell Hill), to the stand, although he fails to suggest a purpose for doing so or to what she would have testified. It is well settled that "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). As the state courts held, Mizell has not met his burden here.

Broadly construed, Mizell merely assumes counsel did not interview or investigate Hill's presence during the multiple episodes over the years he assaulted the victims. In any event, Mizell has not indicated what exculpatory information would have been disclosed by interviewing or calling his aunt to the stand that was not already made clear by other testimony. For example, J.S. and the other victims confirmed that the aunt lived in the home and may have been in the home when Mizell molested them. Mizell has not, however, established anything unreasonable about counsel's decision not to call Hill, nor has he indicated how her testimony, whatever it may have been, would have aided his defense. *See Williams v. Cockrell*, 31 F. App'x 832, 2002 WL 180359, at *3 (5th Cir. 2002) (quoting *Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997) ) (" 'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if

[counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'").

Mizell also alleges that his counsel was deficient for failing to file pretrial and discovery motions. His claim fails, however, because Mizell has not specifically identified any necessary and meritorious motions that went unfiled. *See*, *e.g.*, *United States v. Lewis*, 786 F.2d 1278, 1283 n.4 (5th Cir. 1986) ("Lewis has not indicated how other motions would have led to a different result in his case. … The filing of pretrial motions falls squarely within the ambit of trial strategy." (quotation marks omitted)); *Netter v. Cain*, No. 15-584, 2016 WL 7157028, at *12 (E.D. La. Oct. 6, 2016) (Petitioner must identify necessary motions that counsel failed to file; "bald and unsupported speculation" that such motions went unfiled "is clearly insufficient to meet a petitioner's burden of proof."), *adopted*, 2016 WL 7116070 (E.D. La. Dec. 7, 2016); *Pichon v. Terrell*, No. 11-615, 2012 WL 6569758, at *6 (E.D. La. Oct. 1, 2012) ("[B]ecause petitioner has not identified any other types of pretrial motions which purportedly should have been filed and shown that such motions would have been beneficial to the defense, he has failed to prove either that counsel performed deficiently in this respect or that prejudice resulted."), *adopted*, 2012 WL 6569802 (E.D. La. Dec. 17, 2012); *Lindsey v. Travis*, No. 06-7852, 2007 WL 1237919, at *8 (E.D. La. Apr. 25, 2007) ("[P]etitioner has made no showing whatsoever that any meritorious pretrial motions were abandoned or left unfiled.... He simply has not shown that counsel's failure to pursue pretrial motions constituted deficient performance in any way, much less that prejudice resulted.").

Furthermore, the record indicates that Mizell's counsel and the prosecution entered a Joint Stipulation which preempted the need for counsel to file discovery motions or seek a bill of particulars.[31]   Nevertheless, his counsel filed several pretrial motions to suppress evidence, to

---

[31]St. Rec. Vol. 1 of 22, Joint Stipulation (undated); Joint Stipulation, 5/17/12.

obtain *Brady* evidence and police reports, for notice of intent to use other crimes evidence, to exclude other crimes evidence, and for speedy trial.[32]  As noted previously, although the motions were not successful, Mizell has pointed to nothing to support a claim of ineffective assistance under *Strickland*.

Mizell also makes a cursory argument that counsel was ineffective for failing to obtain grand jury transcripts to prepare for trial.  Under Louisiana law, a defendant is generally not entitled to a grand jury transcript.  La. Code Crim. Proc. art. 434; *State v. Sheppard*, 350 So.2d 615 (La. 1977).  Access is limited by the state courts to only those materials covered by *Brady v. Maryland*, 373 U.S. 83 (1963), which requires production of exculpatory evidence by the State. *See State v. Peters*, 406 So.2d 189 (La. 1981); *State v. Trosclair*, 443 So.2d 1098 (La. 1983); *State v. Williams*, 769 So.2d 629, 635 (La. App. 4th Cir. 2000).  Mizell has not specified any basis under *Brady* for his counsel to have requested access to the grand jury proceedings.  The victim's consistent statements and the police reports were made available to the defense, and his counsel requested release of any *Brady* materials, none of which came from the grand jury proceedings. The record does not demonstrate any basis for his counsel to have questioned the veracity of the grand jury proceedings or testimony.

The fact that Mizell was convicted despite his counsel's preparation and efforts to challenge the State's evidence does not equate to ineffective assistance.  *See*, *Strickland*, 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to

---

[32]St. Rec. Vol. 1 of 22, Motion to Suppress Evidence, 6/4/10; Motion for Disclosure of Evidence Favorable to Defendant, 6/4/10; Motion for Subpoena Duces Tecum, 6/4/10; Motion for Speedy Trial, 6/4/11; Request for Notice, 5/4/12; Motion in Limine, 5/21/12.

make futile motions or frivolous objections).  Mizell has not established that denial of relief on these claims was contrary to or an unreasonable application of *Strickland* by the state courts.  He is not entitled to federal habeas relief.

### 2.    Investigate and Challenge J.S.'s CAC Statement (Claims 3, 15)

Mizell alleges that his trial counsel was ineffective for failure to investigate and challenge alleged contradictions in J.S.'s CAC statements and trial testimony.  He makes non-specific allegations that counsel failed to interview critical witnesses to determine whether J.S. or other unidentified witnesses lied.  The state trial courts denied relief finding that Mizell failed to overcome the presumption that counsel acted within the range of sound trial strategy.

The record reflects that there were no differences between the CAC interview and J.S.'s trial testimony, and Mizell has specified none.  Mizell's counsel repeatedly questioned J.S., and the CAC interviewer, about the details of the CAC interview in an attempt to find some distinctions or differences.[33]  Though unsuccessful, Mizell's counsel persistently attempted to show or at least implied for the jury that J.S.'s statement and recollection in the CAC interview differed from his recollection at trial.  With each attempt, however, J.S. rehabilitated his consistent statements of the timing and graphic details of the abuse by Mizell.[34]

The fact that his counsel's strategy proved unsuccessful is not evidence that counsel performed deficiently.  *See Bell v. Epps*, No. 08-70031, 347 F. App'x 73, 79 (5th Cir. 2009) (a reviewing court must make "every effort to account for the distorting effect of hindsight on ultimately unsuccessful trial decisions") (citing *Strickland*, 466 U.S. at 689).  Mizell has not shown

---

[33]*See*, *e.g.*, St. Rec. Vol. 4 of 22, Trial Transcript, pp. 52-53, 55, 56, , 122, l. 1-4, p. 123, l. 2-3, 5/23/12.
[34]*Id.*

that the state courts' denial of relief was contrary to or an unreasonable application of *Strickland*. He is not entitled to relief on this claim.

**3.    Questioning of Witnesses at Trial (Claims 4(d-e), 5, 6, 7, 11, 13, 14(a))**

Mizell generally alleges that his counsel did not adequately prepare and cross-examine the victims of the prior sexual assaults, J.S.'s mother, and J.S. As noted previously, however, a petitioner's examination of trial counsel's strategic decisions is precluded by *Strickland*.

The method and scope of cross examination is a type of trial strategy for which counsel is granted reasonable latitude. *See United States v. Octave*, No. 12-205, 2015 WL 6620117, at *6 (E.D. La. Oct. 30, 2015) (citing *Pape v. Thaler*, 645 F.3d 281, 291) (5th Cir. 2011). "Although one may want to question some of the tactical decisions made by counsel, [the Court] may not, in hindsight, second-guess counsel's strategy regarding [the witness's] testimony merely because an alternative course of action existed during trial." *Pape*, 645 F.3d at 291. The federal courts have made clear that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." [sic] *Ford v. Cockrell*, 315 F. Supp.2d 831, 859 (W.D. Tex. 2004), *aff'd*, 135 F. App'x 769 (5th Cir. 2005); *accord Lewis v. Cain*, No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), *aff'd*, 444 F. App'x 835 (5th Cir. 2011); *Williams v. Cain*, Nos. 06-0224 c/w 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), *aff'd*, 359 F. App'x 462 (5th Cir. 2009); *Packnett v. Cain*, No. 06-5973, 2008 WL 148486, at *11 (E.D. La. Jan. 10, 2008); *Parker v. Cain*, 445 F. Supp.2d 685, 710 (E.D. La. 2006).

The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such tactical matters through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable

assistance and, under the circumstances, might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. Moreover, it is irrelevant that another attorney might have made other choices or handled such issues differently. As the Supreme Court has noted, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id*.

In this case, for the reasons that follow, Mizell has failed to overcome his burden under *Strickland*, and denial of relief by the state courts was reasonable and not contrary to *Strickland*. He is not entitled to relief.

### a.   C.G. and R.G. (Claims 4(d-e), 11)

The record clearly disproves any suggestion that defense counsel did not adequately cross-examine C.G. and R.G., the victims of the prior sex acts. In questioning C.G., defense counsel avoided rehashing the details of the years of sexual abuse by Mizell that occurred when C.G. was between ages 8 and 15. Instead, his counsel focused on C.G.'s failure to report the abuse. Counsel questioned C.G. about his prior denials and statements to police that nothing happened between him and Mizell, as well as his lack of knowledge about anything between J.S. and Mizell. Mizell has failed to identify what other relevant information was contained in the police report (in which C.G. denied any sexual assault) or how further questioning would have altered C.G.'s testimony. The jury already heard C.G.'s state that he repeatedly denied that anything happened and knew nothing about the assaults on J.S.

Similarly, with R.G., counsel made every reasonable effort to minimize R.G.'s testimony that he was anally raped at gunpoint by Mizell when he was 15 years old. Mizell's counsel questioned R.G. about the four years of silence before he told police about the abuse when he was questioned in 2010 (after Mizell was arrested for raping J.S.). His counsel also questioned R.G.

about his own felony convictions, which included his then-current conviction for carnal knowledge of a juvenile.

Mizell has not pointed to any other exculpatory or impeachment evidence for counsel to have obtained from R.G. or C.G.  His counsel made clear for the jury that neither young man had any knowledge of Mizell's assaults on J.S. and that they were present only to attest to alleged sexual assaults for which Mizell was not on trial.

Mizell also questions the impact on his counsel's performance that the timing of the State's notice of its intent to use this evidence of prior bad acts to show motive and consistency.  The record reflects that counsel requested notice of from the State on May 4, 2012.[35]  Just three days later, on May 7, 2012, and again on May 14, 2017, the State filed its notices that it would be relying on prior bad acts, including the sexual assaults on C.G. and R.G.[36]  Mizell's counsel filed a motion challenging the timing and admissibility of the evidence and testimony from C.G. and R.G. as victims of alleged prior similar acts and other matters.[37]  The motion was heard before trial and denied by the state trial court.[38]

Contrary to Mizell's contentions, a review of the transcript reflects that his counsel was prepared and did reasonably and effectively question the prior victims as discussed previously. Mizell does not indicate what necessary questions went unasked during cross-examination, and he has not explained how he was prejudiced by the timing of the notice of the other crimes evidence. As the state courts resolved, he has failed to establish a violation of *Strickland*.

---

[35]St. Rec. Vol. 1 of 22, Request for Notice, 5/4/12.

[36]St. Rec. Vol. 1 of 22, Notice of Intent, 5/7/12; Notice of Intent, 5/14/12.

[37]St. Rec. Vol. 1 of 22, Motion in Limine, 5/21/12.

[38]St. Rec. Vol. 1 of 22, Trial Minutes, 5/22/12.

> **b.**     **S.H. (Claims 5, 6, 7)**

Mizell alleges that his counsel was ineffective for failure to adequately cross-examine S.H. about threats made by the family to Mizell before his inculpatory statements and to question S.H. about her knowledge of the prior molestation accusations against him in 2000.  Mizell claims that the "threats" made by the family established that his inculpatory statements were made under duress, and his counsel should have used this to establish for the jury that his statements were not voluntarily made.  He also claims that counsel could have questioned S.H. about her knowledge of the 2000 false allegations against him.

According to S.H.'s testimony, in the early morning hours of October 23, 2009, she and the other adults in J.S.'s family found out that Mizell had been molesting J.S.[39]  J.S. and the other children were sent to her cousin's home while S.H., her husband, and J.S.'s father (S.H.'s ex-husband) discussed the matter and made plans to call police.[40]  Mizell eventually showed up at S.H.'s house uninvited.[41]  The family confronted Mizell about the allegations, and told him he could not leave until he told police what he did to J.S.[42]  Mizell stood up to leave and the family physically stopped him.[43]  He said he was going to turn himself in to police.[44]  S.H. had already called the police and told Mizell to wait for them to arrive.  While waiting for the police, Mizell also told them he was going to kill himself.  At one point, Mizell also yelled down the hall towards

---

[39]St. Rec. Vol. 2 of 22, Trial Transcript, pp. 91-96, 5/22/12.

[40]*Id*. at 96.

[41]Mizell and S.H.'s family were supposed to meet at Mizell's house to attend the parish fair together.  S.H. had been stalling Mizell when he called inquiring about their arrival, so and some point he went to her home.

[42]St. Rec. Vol. 2 of 22, Trial Transcript, pp 96, 123, 5/22/12.

[43]*Id*. at 96-97.

[44]*Id*. at 97.

J.S.'s room (not knowing J.S. was not in the house) and screamed, "Why did you do this to me, Johnny? Why did you tell? Why did you do this to me?"[45]

The record reflects that S.H. testified about the inculpatory statements made by Mizell when confronted by the family about the rapes he committed on J.S. Contrary to Mizell's assertions, his counsel questioned S.H. repeatedly about the physical altercations between the family members and Mizell while they waited for police to arrive. His counsel questioned her about the "beatings" Mizell was subjected to at the hands of family members while waiting for police.[46] His counsel also elicited testimony from S.H. that Mizell was at times physically held down by family members while waiting for police to arrive. S.H. also testified that she called 911 a second time to ask if they could put him in handcuffs until the police arrived.[47]

Thus, Mizell is incorrect in his assertions; his trial counsel did in fact present testimony to the jury that Mizell was threatened by the family members when he made the inculpatory statements of his guilt. Furthermore, because those statements were not made in a custodial setting, i.e. at the urging or in the presence of the police, there was no legal basis for his counsel to have argued to the jury (or to the state trial court) that the statements were involuntarily made in violation of his constitutional rights. *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) ("the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions <u>on the part of the police</u> (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (emphasis added)); *Miranda v. Arizona*, 384 U.S. 436, 479 (1966) (limiting the admissibility of statements made during custodial interrogations with the appropriate constitutional warnings).

---

[45]*Id.* at 97.

[46]*Id.* at 105-07.

[47]S.H.'s aged-father was a retired police officer and there were old handcuffs in the home.

Similarly, Mizell also is incorrect regarding his claim that his counsel failed to question S.H. about the prior sexual misconduct allegations made against him in 2000. Mizell's counsel asked S.H. about "the fact that [Mizell] had been accused of this kind of activity before?"[48]  She said she recalled rumors when they were kids "that he was gay," but no one believed it, and she never confronted him about it.[49]  Mizell does not indicate what or how further pressing of the issue about prior criminal allegations against him would benefit his defense.

Furthermore, the jury heard S.H. testify that she had suspicions that Mizell was molesting J.S., and she ignored her intuition. S.H. testified that she began to question Mizell's intentions with respect to J.S. in early 2009, when Mizell started to isolate his attentions and gifts on J.S., to the exclusion of her other children.[50]  She was concerned that Mizell may have been doing inappropriate things to J.S.[51]  S.H. severed her relationship with Mizell in May 2009, in part because of her suspicions (despite J.S. telling her nothing had happened at that point), and in part because Mizell failed to attend her wedding.[52]  After a few months had passed, she told Mizell about her concerns and Mizell denied molesting J.S., after which their family friendship was rekindled.[53]

To the extent Mizell urges that his counsel should have pushed the issue that S.H. knew of prior sexual abuse allegations and still allowed J.S. to be with him, the jury heard enough about S.H.'s regrettable decision to ignore her own intuition which provided the opportunity for Mizell to rape her son.

---

[48]*Id*. at 104.

[49]*Id*. at 104.

[50]*Id*. at 79-80.

[51]*Id*. at 81-82, 86.

[52]*Id*. at 80-81, 86.

[53]*Id*. at 82-83, 87.

For these reasons, Mizell has failed to present any support for his claim of ineffective assistance or to establish his entitlement to relief under *Strickland* as it relates to the cross-examination of S.H.

### c.    J.S. (Claims 13, 14(a))

Mizell asserts that his counsel was ineffective when he questioned J.S. about school, because it prejudicially raised the jury's sympathy and compassion for J.S.  He also claims that his counsel was ineffective when he failed to question J.S. about S.H.'s testimony.  Mizell, however, has not shown deficient performance or prejudice arising from his counsel's questioning of J.S.

The record reflects that Mizell's counsel asked J.S. if he had ever been homeschooled.[54] J.S. answered that he was, because after this occurred, he was being picked on by kids at school.[55] Mizell claims that this question encouraged sympathy for J.S. and was not in the best interest of the defense.  His conclusory claim does not, however, explain how this question, in light of the plethora of evidence against him, impacted the verdict or altered the outcome of the case as required by *Strickland*.

Mizell also claims that his counsel was remiss for failing to question J.S. about his mother's testimony.  Mizell does not elaborate on what questions should have been asked or to what portion of S.H.'s testimony he refers.  As discussed previously, Mizell's counsel actually questioned J.S. about the same topics covered with his mother, including the familial relationship with Mizell, whether J.S. was home when Mizell was confronted by the family, and if or how J.S. knew what occurred when Mizell was confronted by the family.  Mizell's conclusory assertion that counsel

---

[54] St. Rec. Vol. 4 of 22, Trial Transcript, p.68, 5/23/12.

[55] *Id*. at 69.

was deficient in some way is not apparent from the record or established under the *Strickland* factors.

For all of the reasons stated, Mizell has failed to establish that his counsel was ineffective in the cross-examination of C.G., R.G., S.H. or J.S.  As noted by the state courts, his claims are conclusory and insufficient to meet the burden established by *Strickland*.  The denial of relief on these claims was not contrary to or an unreasonable application of federal law.  Mizell is not entitled to relief.

### 4. Confrontation Rights (Claim 14(b))

Broadly construed, Mizell claims that his counsel failed to protect his confrontation rights when he failed to subpoena "the detectives who actually made statements, wrote reports and made on the scene observations."[56]  Mizell does not identify who these detectives are.  As addressed previously, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"  *Graves*, 351 F.3d at 156 (quoting *Buckelew*, 575 F.2d at 521).  Mizell has not identified any particular detective that should have been called by his counsel or to what any such witness would have testified.

To the extent he suggests that the unidentified detective was his accusers for purposes of the Confrontation Clause, his claim also fails.  The Confrontation Clause of the Sixth Amendment provides that in "all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  *Crawford v. Washington*, 541 U.S. 36 (2004).  The Sixth Amendment safeguards the defendant's right to confront his accusers and to subject their testimony

---

[56]Rec. Doc. No. 1-1, p. 45.

to rigorous testing in an adversary proceeding before the trier of fact. *California v. Green*, 399 U.S. 149 (1970).

In this case, Mizell was afforded this opportunity when his counsel questioned J.S., the victim of the rapes. His counsel also questioned J.S.'s parents. His counsel also took the opportunity to question Captain Jeff Varnado, who responded to the 911 call from S.H. about sexual misconduct and the altercation.[57] Varnado arrested Mizell that night for aggravated battery[58] and left after the detective arrived to investigate the sexual assault. He wrote the arrest report and had no role in the sexual assault investigation.

Following the detailed questions already addressed on direct, Mizell's counsel also questioned Chief Joe Culpepper, who conducted the investigation into the sexual abuse allegations against Mizell and transported J.S. to the CAC interview.[59]

Mizell's counsel also questioned the CAC interviewer, JoBeth Rickels, who questioned J.S. during the video recorded statement. His counsel questioned her about her interview tactics and form of the questions asked and challenged the truthfulness of the allegations made by J.S. during that interview.

Mizell was able to face his accuser and those involved in the factual development of the case. He has not identified any other "detective" to be questioned or what questions should have been asked to further maintain his rights under the Confrontation Clause.

---

[57]St. Rec. Vol. 2 of 22, Trial Transcript, pp. 147-153, 5/22/12.

[58]The aggravated battery charge was because Mizell bit and broke the finger of one of the family members during an altercation at the house.

[59]*Id*. at 164-165.

Mizell has failed to establish that his counsel was ineffective for failing to protect his confrontation rights. The denial of relief was neither contrary to nor an unreasonable application of federal law. He is not entitled to relief on this claim.

### 5.    <u>Argument to the Jury (Claim 9)</u>

Mizell's argument in support of his ninth claim is nonsensical. Even under a broad reading, he does no more than generally contend his counsel misled the jury about the dates of J.S.'s reporting of the abuse. During closing arguments, Mizell's counsel attempted to convince the jury that J.S.'s memory was better when he gave his CAC interview than it was at trial, several years later. Counsel noted that "the interview that he gave on October <u>25th</u>, 2009, doesn't have all those details that he had today."[60] (emphasis added). This is the only date referenced in defense counsel's closing argument; the Court must assume that this date, October 25, 2009, is the focus of Mizell's claim.

In fact, J.S.'s CAC interview was held on October <u>28</u>, 2009. The date of October 25, 2009, was the date Mizell was arrested and gave his recorded statement to police. This date reference was made during counsel's argument to the jury and was not evidence or to be relied on by the jury. The state trial court clearly instructed the jury that the arguments of counsel were not evidence. Nevertheless, considering the overwhelming evidence of Mizell's guilt and the clarity in which the dates and evidence were presented to the jury from the witness stand, the record does not support Mizell's suggestion that his counsel confused or misled the jury about the timing of the multiple instances of abuse or the date of the CAC statement.

---

[60]St. Rec. Vol. 4 of 22, Trial Transcript, p. 131, 5/23/12.

Mizell has failed to establish that his counsel was ineffective in the misstatement of the date during closing arguments.  The denial of relief was neither contrary to nor an unreasonable application of federal law.  He is not entitled to relief on this claim.

**6.      Challenge to Other Crimes Evidence (Claims 10, 16)**

Mizell asserts that his counsel was rendered ineffective by the State's late notice of its intent to introduce the testimony of the prior molestation victims, C.G. and B.G.  He also claims that his counsel was ineffective when he failed to object to the State's introduction of other crimes evidence of the prior molestations without proper notice.

Contrary to Mizell's allegations, the record reflects that Mizell's counsel zealously sought to exclude the evidence of the prior bad acts against C.G. and B.G.  As already outlined in this report, on May 4, 2012, Mizell's counsel requested notice from the State of its intent to use such evidence.[61]  On May 7 and 14, 2012, the State filed its notices that it would be relying on prior bad acts, including the sexual assaults on C.G. and R.G.[62]  Mizell's counsel filed a motion challenging the timing and admissibility of the evidence and testimony from C.G. and R.G. as victims of alleged prior similar acts, in addition to other matters.[63]  The motion was heard with full argument before trial and denied by the state trial court.[64]

The record is clear that Mizell's counsel in fact challenged the admissibility of the evidence and the timing of the notice.  The fact that his efforts to exclude the evidence were unsuccessful does not equate to ineffective assistance.  *See Martinez v. Dretke*, 99 F. App'x. 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient

---

[61]St. Rec. Vol. 1 of 22, Request for Notice, 5/4/12.

[62]St. Rec. Vol. 1 of 22, Notice of Intent, 5/7/12; Notice of Intent, 5/14/12.

[63]St. Rec. Vol. 1 of 22, Motion in Limine, 5/21/12.

[64]St. Rec. Vol. 1 of 22, Trial Minutes, 5/22/12.

counsel.")  The state court's denial of relief was not contrary to or an unreasonable application of *Strickland*.  Mizell is not entitled to relief on this issue.

### B.    <u>Appellate Counsel (Claim 2)</u>

Mizell claims that his appellate counsel was ineffective for failure to assert the arguments made in his motions for new trial and for post-verdict judgment of acquittal.  The motions, filed by counsel before sentencing, were based on the assertion that there was no evidence that Mizell actually completed a rape under the state law definition.  Specifically, Mizell's counsel argued that J.S. only told the CAC interviewer that Mizell tried to "jack him off" and tried or attempted to put J.S.'s penis his mouth.[65]  His counsel argued that the failure to actually put the penis in his mouth was not rape.  The state trial court denied Mizell's post-trial motions finding that reasonable minds could not differ as to the jury's findings or as to the propriety of the verdict.  Appellate counsel did not reassert these arguments on appeal.

As outlined previously, appellate counsel need not assert every argument available and has great discretion in asserting those claims that have a reasonable probability of success on appeal and need not raise frivolous claims.  *Duhmel*, 955 F.2d at 967; *Green*, 116 F.3d at 1037.  In this case, Mizell has failed to establish that the claims addressed in his post-trial motions had any likelihood of success or that the failure to assert them was ineffective assistance.

In fact, the record is clear that the post-trial motions were factually inaccurate.  J.S. testified that on the first occasion, he awoke to find Mizell's hand holding and stroking his penis.[66]  On the second occasion, J.S. testified quite clearly that Mizell "put my penis in his mouth."[67]  On the third

---

[65]St. Rec. Vol. 4 of 22, Sentencing Transcript, pp.2-3, 7/2/12.

[66]St. Rec. Vol. 4 of 22, Trial Transcript, p. 19, 5/23/12.

[67]*Id*. at p. 23.

occasion, J.S. again awoke to see Mizell with "my penis in his mouth."[68]  J.S. later confirmed during testimony that Mizell was the person who stroked J.S.'s penis and twice put J.S.'s penis into his mouth.[69]

Thus, Mizell's post-trial motions asserting that there was no evidence that Mizell actually put J.S.'s penis in his mouth to complete the rape were factually incorrect.  As such, there was no reason for appellate counsel to assert the claims on direct appeal.

Mizell, therefore, has shown no deficiency or prejudice resulting from his appellate counsel's failure to assert meritless claims on appeal.  *see*, *Diaz*, 228 F. App'x. at 427; *Smith*, 528 U.S. at 287-88.  He has failed to establish that the state courts' denial of relief on this claim was contrary to or an unreasonable application of *Strickland*.  He is not entitled to relief on this claim.

## VII.  <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Jason Mizell's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

---

[68] *Id*. at p. 30.

[69] *Id*. at 39.

result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[70]

New Orleans, Louisiana, this <u>22nd</u> day of March, 2019.

<br>

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[70]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.